## Ellswick v. Yellow Poplar Lumber Company.

(Decided January 29, 1915.)

### Appeal from Pike Circuit Court.

1. Contracts—Sale of Timber—Action to Enforce.—Where a contract for the sale of certain trees provided that they were to

be inspected and branded by the purchaser's agents, the fact that such agents inspected and branded a greater number of trees than the contract called for imposed no liability on the purchaser other than that called for by the contract.

2. Contracts—Sale of Timber—Finding of Chancellor—Evidence.— Evidence held to sustain the finding of the chancellor fixing the number of trees covered by a contract for the sale of timber.

3. Action—Costs.—Where plaintiff recovered on every substantial phase of the case, defendant cannot complain that he was required to pay half the costs.

4. Contracts—Certainty—Specific Performance—Evidence.—Where a contract for the sale of certain trees provided that payment therefor was to be made upon inspection and branding of the trees by the purchaser's agents, and the delivery of a warranty deed conveying certain rights and privileges in connection with the removal of the timber, evidence examined, and held that, the number of trees embraced in the contract being accurately fixed, the chancellor did not err in decreeing specific performance of the terms of the contract.

STRATTON & STEVENSON and J. S. CLINE for appellant.

J. M. YORK for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

K. B. Ellswick was the owner of the timber on two tracts of land, one containing 1,000 acres, located in Pike county, Kentucky, and the other containing about 50 acres, and located in Buchanan county, Virginia. On April 16, 1912, he, by written contract, sold to the Yellow Poplar Lumber Company all the timber of certain specified varieties on the two tracts referred to that were not less than eighteen inches in diameter inside the bark, stump high. The trees were to be inspected and branded by representatives of the lumber company, and were to be paid for at the price of $1.50 a tree, on completion of the inspection and branding, and on delivery of a general warranty deed conveying certain rights and privileges in connection with the removal of the timber.

The lumber company paid $2,500 on the purchase price. It claimed that only 5,319 trees passed under the contract, and that the amount of the purchase price at $1.50 a tree, was $7,978.50. It then tendered to Ellswick the balance of the purchase price, amounting to $5,478.50. Ellswick refused to accept this sum or to make a deed in accordance with the contract. Thereupon, the lumber company brought this action for specific perform-

ance. During the progress of the action the master commissioner was directed to go upon the land and ascertain and report the number of trees that were within the contract. He fixed the number at 5,489. Each side excepted to the report, but the exceptions were overruled. On final hearing specific performance was decreed, and Ellswick given a judgment for $8,233.50, subject to a credit of $2,500 paid August 27, 1912, the judgment to become effective on the delivery of the warranty deed to the lumber company in accordance with the terms of the contract, the cost to be equally divided between the parties. Ellswick appeals.

There was proof to the effect that certain representatives of the lumber company actually branded a number of trees not only in excess of the number claimed as correct by the lumber company, for which a tender was made, but also largely in excess of the number fixed by the report of the commissioner, and it is claimed that the title thereto necessarily passed under the contract. In other words, it is insisted that the lumber company is absolutely concluded by the action of its agents, and that it should pay for the number of trees inspected and branded by them, even though the trees did not come within the specifications provided in the contract. This contention cannot be sustained. No trees other than those specified in the contract were sold. The lumber company's manager instructed its agents to brand only such trees as were eighteen inches in diameter inside the bark, stump high. They were not authorized to brand any other trees. The mere fact that they, through fraud or error of judgment, branded trees other than those they were authorized to brand in no way affected the rights of the parties to the contract. Suppose, for instance, the trees had been sold for a lump sum. Could it be successfully contended that Ellswick should be deprived of timber not included in the contract merely because the company's representatives branded such timber? We think not; and for the same reason no liability other than that imposed by the contract should be imposed on the lumber company merely because its agents branded trees not covered by the contract. As the contract specifies the trees that were sold, the rights of the parties thereunder depend upon its terms, and not on the unauthorized acts of the agents of either. Since only those trees described in the contract were sold by Ells-

wick and purchased by the lumber company, and as no satisfactory reason is shown for changing the number reported by the commissioner and approved by the chancellor, we see no reason for disturbing the judgment on this branch of the case.

The court did not err in giving judgment without interest except from the date of the judgment. The trees were not to be paid for until after they were inspected and branded and the deed was delivered to the lumber company, and no deed was ever tendered prior to the bringing of the action.

It is next insisted that no costs should have been adjudged against Ellswick, because the court added 170 trees to the number which the lumber company offered to pay for, and to this extent he was successful in the action. As before stated, however, Ellswick never offered to comply with the contract, either on the basis of the offer made by the lumber company, or on any other basis. To enforce its rights the lumber company was compelled to bring suit. It succeeded in recovering on every substantial phase of the case. Under these circumstances, Ellswick might with propriety have been required to pay the entire cost. He cannot, therefore, complain that he was required to pay only one-half of the cost.

Lastly, it is insisted that because the lumber company's agents branded trees other than those specified in the contract, and thus created a confusion as to the number of trees, specific performance should be denied. As a matter of fact, however, there is no confusion. The trees that came within the specifications are still standing. Their number was a matter of easy ascertainment. All that was necessary was to inspect and count them. This service was accurately performed by the commissioner and his assistants. Their number being accurately fixed, and the subject matter of the action being thus clearly defined, notwithstanding the alleged confusion, specific performance was properly decreed.

Judgment affirmed.